## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

JADEN RASHADA,

      Plaintiff,

v.                                  Case No. 3:24-cv-219-MCR-HTC

HUGH HATHCOCK; WILLIAM
"BILLY" NAPIER; MARCUS
CASTRO-WALKER; and VELOCITY
AUTOMOTIVE SOLUTIONS, LLC,

Defendants.

_____/

### DEFENDANT CASTRO-WALKER'S MOTION TO DISMISS
### AND INCORPORATED MEMORANDUM OF LAW

Defendant Marcus Castro-Walker ("Castro-Waker"), moves under Federal

Rules of Civil Procedure 9(b) and 12(b)(6), as well as Florida Statute §768.28(9)(a),

to dismiss Plaintiff Jaden Rashada's Complaint, stating as follows:

### INTRODUCTION

Jaden Rashada ("Rashada") was a high school football player being recruited

by the University of Florida ("UF") and Marcus Castro-Walker ("Castro-Walker")

was the "Director of Player Engagement and NIL" at UF.  Because Castro-Walker

had a prior personal relationship with Rashada's father, Castro-Walker was one of

the individuals at UF specifically tasked with recruiting Rashada to UF.

Accordingly, the sole goal of UF, acting through Castro-Walker, was to have Rashada accept UF's scholarship offer and play for UF.

Under NCAA rules at the time, UF was not allowed to provide money or other financial benefits to Rashada in order to induce him to accept their scholarship offer, a fact of which Rashada and his legal representatives were fully aware. As made clear in the Complaint, everyone knew that any additional financial benefits Rashada would receive for his Name, Image and Likeness ("NIL") would have to come from a source outside of UF.

Thus, as UF's Director of Player Engagement and NIL, it was clear to everyone involved that Castro-Walker could only take two actions in compliance with NCAA rules: 1) offer Rashada a scholarship to UF, and 2) tell Rashada's representatives that they would have to speak to independent outside sources regarding any potential future NIL benefits. Both of these acts were clearly within the course and scope of Castro-Walker's position at UF, and both were entirely consistent with UF's goal of getting Rashada to accept its scholarship offer.

Ultimately, Rashada accepted UF's scholarship offer when he signed a binding NCAA letter of intent on December 21. 2022. Both Rashada and UF entered into that scholarship contract voluntarily and with informed consent, proving that Castro-Walker did in fact have authority to offer the scholarship on UF's behalf and that UF approved of him doing so. Castro-Walker had accomplished his task.

## ARGUMENT AND MEMORANDUM OF LAW

## I.     SOVEREIGN IMMUNITY

Before analyzing whether the Complaint is deficient in its factual pleadings, the Court must determine whether or not it is even proper for Marcus Castro-Walker to be a named party in this action at all.

Even if we accept the worst of Rashada's false allegations as true -- that Castro-Walker conspired with others to trick Rashada into accepting UF's scholarship offer by dangling the carrot of future NIL benefits upon signing -- the fact remains that Castro-Walker would *still* have been acting solely within the interests of UF in achieving its goal of convincing Rashada to play for UF.  There is no world in which Castro-Waker was doing anything to *prevent* Rashada from attending UF, nor was there any time in which Castro-Walker was acting in his *individual* capacity to do anything *contrary* to the interests of UF.  In fact, the Complaint is completely devoid of any such allegations.

So why then has the Plaintiff's counsel tried to perform legal gymnastics by suing Castro-Walker individually instead of simply suing UF for any alleged torts he may have committed in the course and scope of his employment?  It can only be because the Plaintiff is desperately trying to improperly avoid the caps on damages that come with sovereign immunity… which must not be allowed.

Every count alleged against Castro-Walker in the complaint is based in tort, and Florida Statute §768.28(9)(a) specifically states:

> An officer, employee, or agent of the state or of any of its subdivisions may <u>not be held personally liable in tort or named as a party defendant</u> in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Because it has not been sufficiently alleged or shown that Castro-Walker acted with *actual* malice, Castro-Walker may not be held personally liable or named as a party defendant and the action against him must therefore be dismissed with prejudice.

Courts apply a two-pronged approach when considering a motion to dismiss. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010). First, a court must "eliminate any allegations in [a] complaint that are merely legal conclusions." *Id*. A court must then take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotations omitted). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim ... plausible on its face" is subject to dismissal. *Id.* at 1289. Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

4

Castro-Walker was at all relevant times the Director of Player Engagement and NIL at the University of Florida. (*see* Complaint ¶ 17.)  Technically, however, Castro-Walker was at all relevant times an employee of The University Athletic Association, Inc. ("UAA"), a UF direct-support organization (DSO) pursuant to Florida Statute §1004.28.

UF and the UAA are both "state agencies and subdivisions" entitled to sovereign immunity protection under Florida Statute §768.28. *Plancher v. UCF Athletics Ass'n, Inc.,* 175 So. 3d 724 (Fla. 2015), wherein the Florida Supreme Court held that university athletic associations primarily act as instrumentalities of the state and thus are entitled to limited sovereign immunity under section 768.28.

All of Castro-Walker's communications with Jaden's representatives were conducted in good faith and within the course and scope of his employment position at UF in an effort to recruit Jaden Rashada to attend UF.  Castro-Walker occasionally passed messages back and forth between Jaden's representatives and others, but Castro-Walker repeatedly made it clear to everyone that he was only acting as a conduit of information and was in no way acting as an agent or representative of any collective or individual other than UF.  Castro-Walker knew that colleges were not allowed by the NCAA to use monetary "NIL" (Name, Image & Likeness) promises as inducements to convince prospective recruits to sign with their school, so Castro-

Walker repeatedly included the following language in his communications with Jaden's representatives: *"I refuse to be involved in prospect dealing."*

Nowhere in the Complaint is it alleged that Castro-Walker's recruiting efforts were outside the normal course and scope of his employment.  Everything he is alleged to have done falls clearly within the defined role of a college recruiter.  Accordingly, Castro-Walker may not be sued or named a party defendant to this action because nowhere in the complaint is it alleged or proven that Castro-Walker acted with the level of malice or evil intent necessary to take him outside the protection granted by Florida Statute §768.28(9)(a).

Florida law shields governmental agency employees from liability in tort actions for conduct taken "in the scope of her or his employment." See *Fla. Stat*. § 768.28(9)(a).  However, those employees have no immunity where they acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.*  Thus, courts must dismiss such claims unless the plaintiff makes "a good faith allegation in the complaint" that the public official either acted outside the scope of his employment or "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." See *Forrest v. Pustizzi*, No. 16-cv-62181, 2017 WL 2472537, at *6 (S.D. Fla. June 7, 2017) (Gayles, J.) (quoting *Brown v. McKinnon*, 964 So.2d 173, 175 (Fla. 3d DCA Case 9:16-cv-81247-RNS Document

92 Entered on FLSD Docket 06/17/2022 Page 5 of 10 2007)).  In other words, at the pleading stage, a plaintiff must allege that the public official acted out of "ill will, hatred, spite, or an evil intent" or that the official "knew, or reasonably should have known . . . that his or her conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences." *Id*.

The question of whether an act was committed with malicious purpose, bad faith, or with wanton and willful disregard <u>is not a question that must be submitted to a jury</u>, but rather, can be decided by the Court depending on the facts. *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004) (determining that the Florida Supreme Court "explicitly disavowed the proposition that the question of bad faith must always be submitted to the fact finder").

The 11th Circuit recently addressed this issue in *Coleman v. Riccardo*, 41 F.4th 1319 (11th Cir. 2022), wherein the court defined the level of malice required to overcome sovereign immunity protection for individuals, stating:

> The first two exceptions [of §768.28(9)(a)], "in bad faith" and "with malicious purpose" are "synonymous with each other under Florida law."  Another way to put it is that Florida courts have equated bad faith with "the actual malice standard."  The "actual malice" and "malicious purpose" exceptions apply when the conduct was committed with "<u>ill will, hatred, spite, or an evil intent.</u>"  We will refer to this Florida sovereign immunity carve-out as the actual malice exception. *Id.* at 1325.

7

Having defined "actual malice" in regard to §768.28(9)(a), the *Coleman* court went on to clarify that the lesser standard of "legal malice" does <u>not</u> apply in such cases:

> Legal malice requires only "proof of an intentional act performed without legal justification or excuse" and "does not require proof of evil intent or motive." The district court erred in this case when it applied the legal malice standard – instead of the actual malice standard – and determined that an arrest without probable cause by itself establishes that the officers acted with malice for the purposes of §768.28(9)(a). It doesn't. *Id.* at 1326.

Having determined that the lower court had not properly analyzed the actual malice issue, the court went on to say:

> We will go ahead and resolve the immunity issues now instead of remanding the case for the district court to do so in the first instance. See *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (explaining that it is important to resolve issues of immunity from suit "<u>at the earliest possible stage in litigation</u>"). *Id.*

In conducting a de novo review, the *Coleman* court found that plaintiff's complaint alleged that police officers made repeated visits to his house prior to his arrest, and that this created a genuine issue of "bad faith or malice" in that the defendant officers were part of "some kind of plan" to kill or capture him. These conclusory allegations and speculations -- which are remarkably similar to the unsubstantiated "conspiracy" claims alleged in the instant complaint -- were found by the 11th Circuit to be insufficient to create a genuine issue of material fact on the presence of "malice." Id., citing *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018) ("Conclusory allegations and speculation are insufficient to create a

8

genuine issue of material fact.").  Accordingly, the Court stated that "speculation is no substitute for evidence" and ruled that the officers were entitled to sovereign immunity protection. Id.

Moreover, the court in *Coleman* went on to rule that even the act of <u>battery</u> would not automatically rise to the level of actual malice required to overcome sovereign immunity, stating:

> Even assuming for present purposes that the officers' physical contact with Coleman during the course of his arrest was a battery, there is no genuine issue of material fact that the defendant officers acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property." *Id.*

Accordingly, the *Coleman* court granted the defendants' motion for sovereign immunity protection.

In the instant case, even a reading of the complaint in the light most favorable to the plaintiff fails to show any allegations of conduct that rise to the level of *actual* malice.  If the act of *battery* cannot even overcome the threshold, then certainly none of the allegations against Castro-Walker do either.  Because no reasonable jury could find that Castro-Walker was acting with ill-will, hatred, spite, or an evil intent, the case against him must be dismissed with prejudice *at the earliest possible stage in litigation* – which is now.

Even if mere allegations of fraud alone *were* found enough to make Castro-Walker individually liable, the fraud would have to be plead properly and

sufficiently.   In *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ*., 724 So. 2d 163, (Fla. 1st DCA 1998), the appellate court found that a governmental employee's fraud was enough to protect the governmental employer from liability. In *Parker*, the governmental employee was accused of fraudulently offering a contract that included a pay raise to a fellow employee and then never following through with the raise.  That case, however, has one major distinction that renders it inapplicable in ours.

In *Parker*, the governmental employer specifically argued that the governmental employee did *not* have the employer's authorization to offer the contract in the first place.  Clearly, therefore, it was bad faith and prima facie fraud on its face for the employee to knowingly go outside the course and scope of his employment and make a contract offer without the permission and consent of his employer.  This case did not just involve an allegation of fraud… it involved an *admission* of it.

In the instant case, however, the facts are completely different.  Here, Castro-Walker undeniably <u>did</u> have UF's authorization to offer a scholarship contract to Rashada, as evidenced by the fact that UF happily acknowledged and acquiesced to the completed contract upon its signing.  Accordingly, the bad faith and actual malice that was so clearly evident in *Parker* is entirely lacking in our case.  Absent such

proof of bad faith, the Court must dismiss the Complaint with prejudice for all of the reasons previously stated.

The Plaintiff will be left with the clear and easy remedy of simply suing UF directly for whatever torts their employee may or may not have committed while doing his job.

## II.    Fraud: Counts I-III

A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands _more_ than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation omitted).  A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for _more_ than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do _not_ suffice." *Id*. Thus, a pleading that offers mere "labels

11

and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. See *Twombly*, 550 U.S. at 555.

In addition, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud "to state with particularity the circumstances constituting fraud." The purpose of the rule is to protect a defendant's good will and reputation when the defendant's conduct is alleged to have been fraudulent." *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1278 (11th Cir. 2006). This requirement "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.,* 246 F.3d 1194, 1202 (11th Cir. 2001). Failure to meet the requirements, as we see done in the instant Complaint, "is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1012 (11th Cir. 2005)(per curium).

A false statement of fact, to be ground for fraud, must be of a past or material fact, not a promise to do something in the future. *Bailey v. Covington*, 317 So. 3d 1223, 1228 (Fla. 3d DCA 2021). Nowhere in the Complaint is it alleged that Castro-Walker ever made any promise that Castro-Walker himself would ever pay or do anything. Even in a light most favorable to the Plaintiff, all Castro-Walker did was *predict* what he thought *others* would do. This is why the Plaintiff made a futile

12

effort to plead agency, apparent agency and conspiracy theories, because without them the fraud counts against Castro-Walker fail on their face.

Under Florida law, an agency relationship requires "acknowledgement by the principal that the agent will act for him, the agent's acceptance of the undertaking, and control by the principal over the actions of the agent. *Marchiso v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1311.  The Complaint is completely devoid of any facts that meet these elements.   In fact, the facts plead in the Complaint contradict any such conclusion, as Castro-Walker is clearly an agent for his employer, the UAA/UF, while Defendant Hugh Hancock is clearly an independent businessman with no affiliation to the university other than being one of more than 500,000 Gator fans worldwide.   Likewise, Castro-Walker was never an agent of the Gator Collective, LLC.   There are simply no showings of Castro-Walker being controlled by anyone other than the UAA/UF, which is precisely why the Complaint should be dismissed on sovereign immunity grounds as previously stated.   The Plaintiff has stated no facts that specifically prove an agency theory, or even an *apparent* agency theory, but merely a bare assertion that Jaden "believed" that such a relationship existed.  A belief is not a fact, and no such facts meeting the necessary elements were plead.  The Complaint must be dismissed on this basis.

Moreover, a Complaint also must not "lump together all of the defendants in allegations of fraud" as we see done repeatedly in the instant case. *Ambrosia Coal*

*& Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1317 (11th Cir. 2007).  The instant Complaint is an "impermissible shotgun pleading" in that "it asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir. 2015).  The Plaintiff clearly does this in an attempt to bolster its improper conspiracy and agencies theories, but such claims must be broken down and plead against each defendant separately so that they may be defended properly.  Failure to do so calls for dismissal.

The instant Complaint also fails in that it improperly asks the Court to assign scienter to the defendants' actions using improper *post hoc ergo propter hoc* logic. The Plaintiff makes conclusory allegations of fraud and the defendants' mental state based solely on how the timeline ended and not on any supporting facts or evidence. *Losey v. Warden,* 521 F. Appendix 717, 719 (11th Cir. 2013).  The mere fact that a marriage ultimately ends in divorce cannot be used in hindsight to prove that a party had fraudulent intentions when they proclaimed "'til death do us part" at the altar years earlier.   There is not a single fact plead in the Complaint that truly evidences any degree of scienter on the part of Marcus Castro-Walker, so the heightened pleading standards of Rule 9(b) require dismissal of Counts I though IV. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (11th Cir. 2007); *Wilding v. DNC Servs. Corp.,* 941 F.3d 1116, 1127 (11th Cir. 2019).

The simple truth is that overly-optimistic "promises" are made every day in college football recruiting. Players are told all the time that they "will be starting by their sophomore season" or that they "will win the Heisman Trophy if they play in this offense" or that they "will be a first-round NFL draft pick if they attend this school." Opening the doors of the federal courthouse to every college football player seeking injunctive relief or specific performance of an "oral contract" when their dream doesn't materialize would only lead to a class of plaintiffs larger than any mass tort action on record.

Jaden Rashada voluntarily chose to make a public commitment to UF on November 10, 2022, yet he had full and complete freedom to change his mind at any time before he later signed his NCAA Letter of Intent to attend UF on December 21, 2022. The Gator Collective LLC had terminated its contract on December 6, 2022, so Jaden and his professional agents still had more than two weeks in which to shop his services to any school or NIL collective in the country and procure another written contract. More importantly, there is nothing magical or mandatory about the December 21, 2022 signing date; it is only the *first* day on which recruits can sign, not the last. Accordingly, had Jaden received sound advice from his agents, he would have waited to sign his NCAA Letter of Intent until *after* a new written contract for NIL benefits had been obtained -- whether it was with a collective associated with

UF, or one associated with the dozens of other schools that were also offering an athletic scholarship to Jaden.

Ironically, the Complaint (*see* ¶ 99) refers to a written draft instrument entitled "Assignment" as evidence of the monetary "promises" that were being made to Jaden during this time period... but the Complaint fails to mention that this "Assignment" was a self-serving document prepared entirely by Jaden's agents and their attorney.  It was never approved, adopted or signed by any of the Defendants, and it was merely another desperate attempt by Jaden's representatives to greedily salvage a legally terminated contract rather than go out and mitigate damages by finding a new contract for their client elsewhere.  Then again, it was that same attorney who had also drafted the original NIL contract with the Gator Collective that allowed for unilateral termination and which contained unagreed-upon monetary amounts, so perhaps that attorney was more interested in protecting himself than his client at that point.

Regardless, Jaden was allowed by his agents to sign a Letter of Intent with UF without any written NIL contract in place... and then voluntarily elected to *leave UF less than a month later* (*see* ¶ 66) before any future payments could be made.  How can Jaden possibly prove that he never would have been paid when his own actions rendered those payments null and void?

For the sake of argument, even if the original written contract *had* been assigned, the same termination clauses in the contract that allowed it to be unilaterally terminated by the assignor (Gator Collective, LLC) would have also allowed Hathcock or any assignee to terminate it as well.  Likewise, an assignment would have still required Jaden Rashada to honor his side of the contract ... which he clearly breached when he chose to never show up in Gainesville in January of 2023.  So, as the Dire Straits song says, this is really just a case about Jaden Rashada seeking "Money for Nothing."

## III.   Conspiracy to Coerce: Count IV

Count IV involves a claim of coercion, which in and of itself against Castro-Walker cannot stand alone, so it was improperly stretched into a *conspiracy* count of coercion against all defendants jointly.  For a civil conspiracy to be actionable, some separate underlying tort or wrong is required.  *Florida Fern Growers Ass'n, Inc.; Wright v. Yurko,* 446 So.2d 1162 (Fla. 5th DCA 1984).  The defendants in this case were not attempting to commit any wrong; the defendants were merely recruiting Jaden Rashada to attend UF.  For Castro-Walker, that was his job.  The fact that a college football recruit may have felt pressured to sign with a particular team by that particular team's coaches should not surprise anyone.  As Alec Baldwin said in *Glengarry Glen Ross*, the key to success for every salesman in every field is to "Always Be Closing."  If "buyer's remorse" is now going to become actionable

against any college football coach who even remotely pressured a recruit into signing with his school by mentioning that he was also considering other recruits at the same position – especially when said statement was *true* – then it will be the end of college football recruiting as a whole.  Likewise, if such pressure can rise to a "conspiracy to coerce" when five coaches from a team visit a recruit in his home instead of just one, then the entire college football recruiting rulebook would have to be rewritten. There is no underlying tort or wrong in this case, so Count IV must be dismissed with prejudice.

## IV.    Negligent Misrepresentation: Count V

Count V involves claims of negligent misrepresentation that are plead in the alternative to the aforementioned claims of fraud -- with the only difference being that Plaintiff has alleged that Castro-Walker *should have* known certain facts were false as opposed to *actually knowing* they were false -- but this count must be dismissed with prejudice for the same reasons as Counts I – III.

A false statement of fact, to be ground for fraud, must be of a past or material fact, not a promise to do something in the future. *Bailey v. Covington,* 317 So. 3d 1223, 1228 (Fla. 3d DCA 2021).  Nothing in the future is guaranteed, so by logic, nothing in the future can be deemed a "fact" until *after* the time for it to occur has passed.  Nowhere in the Complaint is it alleged that Castro-Walker ever made any promise that Castro-Walker himself would ever pay or do anything.  Even in a light

most favorable to the Plaintiff, all Castro-Walker did was predict what he thought others would do.  Accordingly, for this count to stand, the Plaintiff has the impossible burden of proving that Castro-Walker *should have* been able to predict the future with 100% accuracy... a feat that even Carnac the Magnificent and Nostradamus couldn't accomplish.

But more importantly, as argued previously in regard to sovereign immunity, this count must be dismissed with prejudice because on its face it patently does not involve the *actual* malice required to overcome Florida Statute §768.28(9)(a).

## V.   Tortious Interference: Counts VI-VII

Counts VI and VII both involve tortious interference, which would require the Plaintiff to prove that Castro-Walker acted improperly to either cause a third party (Miami's NIL booster) to breach its contract with Jaden, or to impede Jaden's performance of the NIL contract with Miami's NIL booster.  Neither could be further from the truth.  Jaden admits in his Complaint that it was his sole decision to walk away from the alleged $9.5 million Miami contract (of which no proof has yet to surface) on November 10, 2022.

Prior to this November 10, 2022, breach by Jaden of the Miami NIL contract, the only communications alleged in the Complaint to have been made by Castro-Walker were:

**"You already know what we need to do over the next few days!!**
**Get us the QB."** (*see* ¶ 28)

**"We need to lock down Jaden!"** (*see* ¶ 29)

**"[UF would] want [Jaden] to flip this week."** (*see* ¶ 29)

Nothing about these communications could be considered improper in the realm of recruiting, especially since they were made to Jaden's representatives rather than to Jaden himself.

The Restatement (Second) of Torts section 766 (1979) states:

> One who intentionally and <u>improperly</u> interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise <u>causing the third person not to perform the contract</u>, is subject to liability to the other for the pecuniary loss resulting to the other <u>from the failure of the third person</u> to perform the contract. (<u>emphasis added</u>)

A clear reading of the Restatement shows that the only party who might have had legal standing to bring a claim for tortious interference would have been the third-party Miami NIL booster that had contracted with Jaden Rashada -- <u>not</u> Jaden Rashada himself.

Under any reading of the Complaint, the only possible interpretation is that Jaden got greedy and voluntarily turned down guaranteed money in order to take whatever was behind Door #2.  In today's version of *Let's Make a (NIL) Deal*, just as in the original television show, the contestant has no legal recourse when <u>their own decision</u> results in them ultimately leaving with only a Billy goat or a block of cheese.  Accordingly, Counts VI and VII must be dismissed with prejudice.

## **CONCLUSION**

The Complaint accuses Castro-Walker of fraud without sufficient allegations of fact, and therefore must be dismissed for all of the grounds stated herein

### **Certificate of Word Count**

I hereby certify that the foregoing contains 4,945 words, based on the word count of the word-processing system used to prepare same.

Dated September 25, 2024.

**s/ Halley B. Lewis, III_____**
Halley B. Lewis, III
FONVIELLE LEWIS MESSER
& McCONNAUGHHAY
FL Bar ID No. 0915742
3375 Capital Circle Northeast, Building A
Tallahassee, FL 32308
(850) 422-7773
FAX:  (850) 422-3449
Primary email:  hal@wrongfullyinjured.com
Secondary email:
angela@wrongfullyinjured.com
Attorney for Defendant Marcus Castro-Walker